IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JESSICA RYBURN, *as next friend of* L.W., | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:16-CV-879-RP |
| GIDDINGS INDEPENDENT SCHOOL DISTRICT, | § § § § | |
| Defendant. | § § | |

## **ORDER**

Before the Court is Defendant Giddings Independent School District's Second Amended Motion to Dismiss. (Dkt. 14). Having reviewed the pleadings, the parties' arguments, and the governing law, the Court issues the following order.

## **BACKGROUND**

Plaintiff Jessica Ryburn brings this action on behalf of L.W., her minor son. L.W. was previously a student athlete at a middle school within Defendant Giddings Independent School District ("the District"). The claims here arise from an injury L.W. sustained while engaged in an exercise called "mat drills" at the direction of his coach.

Plaintiff alleges that it was common practice for the District's athletic department to direct male student athletes to engage in mat drills.[1] The exercise involves two students "on all fours on the mat going at each other until one is pinned or knocked off the mat." (2d Am. Compl., Dkt. 11, ¶ 41). These drills are purportedly dangerous. A student sustained a serious ankle injury one year before L.W.'s injury, and a second student, A.B., had his braces knocked out during these drills. (*Id.*

---

[1] These facts are taken from Plaintiff's complaint and are assumed to be true.

¶ 45–46). A.B.'s mother approached the District's athletic director, Derek Fitzhenry, who ended the mat drills. However, the mat drills resumed once Fitzhenry left the district in 2014.

On April 11, 2014, Coach Strickland, a District employee, directed L.W. to engage in mat drills. (*Id.* ¶ 48). Two other coaches were present. (*Id.*). Shortly before L.W. began the drill, another boy hit his head very hard during the exercise and was dazed by the impact. (*Id.* ¶ 49). Plaintiff asserts that, to her knowledge, the boy did not receive a concussion assessment. (*Id.*). When it was L.W.'s turn, he was sitting on the mat on his knees when his opponent lunged forward, spearing L.W. in the chest with his head. (*Id.* ¶ 50). The force of the blow knocked L.W. back off his knees and his head slammed down on the tile floor beyond the edge of the mat. (*Id.* ¶ 51). The impact caused L.W. to lose consciousness, coming to only when another student slapped his face. (*Id.* ¶ 52). Regaining consciousness, L.W. told the coaches that his vision was spinning, yet the coaches did not assess him for a concussion but instead allowed L.W. to sit out the class period while the mat drills continued. (*Id.* ¶¶ 54–57).

After the gym class, another student helped L.W. get to the school nurse, who provided him an ice pack and an Advil before sending him to class without assessing him for a concussion. (*Id.* ¶¶ 58–59). The nurse thereafter called Plaintiff at work to inform her about L.W.'s injury. (*Id.* ¶ 60). Plaintiff then directed L.W.'s grandmother to retrieve him from school and take him to the hospital. (*Id.* ¶ 62). After being assessed at the hospital, L.W. was diagnosed with a severe concussion and cerebral edema. (*Id.* ¶ 65). The brain injury has caused a host of other health problems: L.W. has experienced difficulty eating and sleeping, suffers from depression, anger, anxiety, post-traumatic stress disorder, and diminished cognitive capacity, among other problems. (*Id.* ¶ 71–91).

Plaintiff approached L.W.'s coach a week after his injuries. She reports that the coach dismissively told her L.W. "just got his bell rung real good," and falsely claimed that L.W. had not lost consciousness. (*Id.* ¶¶ 67–68). This response was typical of the District's flippant attitude toward

sports-related injuries, according to Plaintiff. Although the District's Board of Trustees approved an Athletic Concussion Plan in 2011, that plan was not easily accessible to students or parents on the District's website or in the student or parent handbooks. (*Id.* ¶¶ 28–33). Additionally, the District's Athletic Guide for the 2015–2016 school year provided little information regarding the proper handling of sports injuries and no information specific to concussions. (*Id.* ¶¶ 34–35). The sparse available information is noteworthy, according to Plaintiff, in light of state statutes and agency directives that policies and procedures be in place to deal with concussions. (*See id.* ¶¶ 20–27).

The failure to adequately implement these requirements has purportedly led to injuries other than L.W.'s. Plaintiff alleges that another student within the District suffered three concussions over the course of three football games in 2014 and 2015. (*Id.* ¶ 37). In each instance, the student was encouraged to continue playing. (*Id.*). After one concussion in 2015, the student was allegedly teased and, despite being disoriented and confused, was allowed to drive home. (*Id.* ¶¶ 38-39).

Plaintiff asserts causes of action under Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 *et seq.*, and 42 U.S.C § 1983. Plaintiff alleges that the District, through subjecting male students to inherently dangerous exercises, has deprived L.W. of an educational opportunity on the basis of his sex. Plaintiff further alleges that the District's failure to properly implement concussion policies or to train its employees to handle concussions has caused various violations of L.W.'s constitutional rights. More specifically, Plaintiff claims deprivations of L.W.'s rights to bodily integrity, education, medical care, and equal protection.

## LEGAL STANDARD

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil Procedure 8

mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. If not, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Throughout this process, the court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).

**DISCUSSION**

The Court first considers Plaintiff's Title IX claim before turning to the various constitutional claims.

1. **Title IX**

Title IX states, in pertinent part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C.

4

§ 1681(a). Although the statute expressly recognizes only administrative enforcement of Title IX, the Supreme Court has held that Title IX is also enforceable through an implied private right of action. *See Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979).

Under Title IX, "a recipient of federal funds may be liable in damages only for its own misconduct." *Davis*, 526 U.S. at 640. To be liable, the recipient *itself* must "'exclude persons from participation in, . . . deny persons the benefits of, or . . . subject persons to discrimination under" its "programs or activities." *Id.* at 640–41 (alterations removed). Further, because Title IX was enacted pursuant to Congress' Spending Clause power, a recipient may be held liable in damages only when it *intentionally* engages in such misconduct. *Id.* at 641–42; *see Franklin*, 503 U.S. at 74–75 ("The point of not permitting monetary damages for an unintentional violation [of a Spending Clause statute] is that the receiving entity of federal funds lacks notice that it will be liable for a monetary award . . . [t]his notice problem does not arise in a case . . . in which intentional discrimination is alleged."). Thus, a school district may be held liable only when it has "actual notice" of a violation of and is deliberately indifferent to discrimination. *Gebser*, 524 U.S. at 290.

The primary differential treatment alleged to be actionable in this case appears to be the use of mat drills among male athletes within the District, which, to Plaintiff's knowledge, female athletes were not required to perform. The Court does not find that this allegation supports an inference of impermissible discrimination under Title IX. That statute and its attendant regulations require "equal accommodation" in athletic opportunities, but nothing in Title IX requires the available opportunities to be identical. It has accordingly been held that a school's disparate provision of athletic opportunities might nonetheless be justifiable under the statute if the available opportunities effectively accommodate the current interests and abilities of the underrepresented sex. *See, e.g., Cohen v. Brown Univ.*, 991 F.2d 888, 897 (1st Cir. 1993) ("[I]f a school has a student body in which one sex is demonstrably less interested in athletics, Title IX does not require that the school create

5

teams for, or rain money upon, otherwise disinterested students; rather, [Title IX] is satisfied if the underrepresented sex's discernible interests are fully and effectively accommodated."); *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 878–79 (5th Cir. 2000) (affirming district court's finding that university's failure to create a women's fast-pitch softball team violated Title IX in light of evidence of sufficient interest and ability among female students).

Plaintiff might respond that the mandate of equal opportunity is separate from the requirement of equal treatment, on which she bases her complaint. *See* 30 C.F.R. § 106.41(a) & (c). However, if schools may lawfully provide different athletic opportunities to each sex, so long as it adequately accommodates their interests and abilities, it logically follows that they may permissibly implement an exercise program that is appropriate for the relevant sport. For example, a school that lawfully provides only a men's football team because of a demonstrated disinterest among female students does not engage in impermissible gender discrimination by requiring only the male team members to practice throwing a football. A contrary holding—imposing liability on differences in particular exercises—would have the absurd result of allowing schools to provide different athletic offerings while forbidding appropriate exercises unless both sexes are required to engage in them.

Under this understanding, Plaintiff's allegation that L.W. was required to engage in exercises that female students were not simply does not suffice to state a plausible claim of actionable discrimination under Title IX. As explained, the school might permissibly do so and, without more, the allegation is equally consistent with lawful conduct and fails to support a plausible cause of action. *See Iqbal*, 556 U.S. at 378 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal quotations omitted).

Though not entirely clear, Plaintiff may also be claiming that the school's alleged indifference to the injuries of male players constitutes a second basis for her Title IX claim. Beyond a conclusory

6

assertion of indifference, the complaint offers few factual allegations to support this claim. Plaintiff's complaint identifies three male students who sustained injuries, but it contains no allegations to suggest that the District's response to the injuries of female students differs in any respect. (2d Am. Compl., Dkt. 11, ¶¶ 37–39, 45). Indeed, Plaintiff alleges only that female students have never been injured during a gym class in the same manner as L.W. (*Id.* ¶ 44). The Court cannot infer from these facts that the District is intentionally providing inadequate care to injured male students on the basis of their sex. Accordingly, the allegations fail to support a claim of gender discrimination under Title IX. The claim must therefore be dismissed.

**2.     42 U.S.C. § 1983**

"To state a claim under § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). Plaintiff asserts that the District has violated several of L.W.'s rights, including his Fourteenth Amendment rights to bodily integrity, education, and medical care, as well as his right to equal protection. The District asserts that many of these claimed rights have never been recognized in factually similar circumstances and that Plaintiff has failed to allege facts sufficient to support any intentional denial of equal protection. The District further argues that the facts do not plausibly suggest that it is responsible for any demonstrated violations. The Court examines each claim.

**A.     Equal Protection**

Plaintiff asserts in her complaint that L.W., as a class of one, was treated in a discriminatory manner as compared to other similarly situated students. (2d Am. Compl., Dkt. 11, ¶ 123). However, Plaintiff offers no factual allegations suggesting that L.W. was personally singled out for differential treatment. *See Wood v. Collier*, 836 F.3d 534, 541 (5th Cir. 2016) ("Typically, a class of one involves a

discrete group of people, who do not themselves qualify as a suspect class, alleging the government has singled them out for differential treatment absent a rational reason."). On the contrary, the complaint alleges that others were required to engage in mat drills and that at least one other student suffered a concussion that was not appropriately addressed.

To the extent Plaintiff intends to complain of unequal treatment on the basis of gender, Plaintiff offers no facts to plausibly show that the District treated boys differently for a discriminatory purpose, as explained above in reference to Plaintiff's Title IX claim. *See Integrity Collision Ctr. v. City of Fulshear*, 837 F.3d 581, 588 (5th Cir. 2016) ("[Plaintiffs] must show that the [government] treated similarly situated individuals differently for a discriminatory purpose. Discriminatory intent requires that the [government's] decision be made at least in part because of its discriminatory effect on [Plaintiffs] rather than mere knowledge that adverse consequences will result.") (internal quotations, alterations, and citations omitted).

Lacking allegations that L.W. was singled out for discriminatory treatment, or that male students were treated differently for a discriminatory purpose, Plaintiff has failed to state a valid equal protection claim under either a class-of-one or gender-based theory.

**B.      Bodily Integrity**

Plaintiff claims that L.W.'s right to bodily integrity was violated when he was injured during the mat drills. Plaintiff is correct that students have a right to bodily integrity that may be violated by school employees. *See, e.g., Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443 (5th Cir. 1994) (finding student's right to bodily integrity violated through sexual molestation by teacher). On the other hand, the District is also correct that the circumstances in which a student's right to bodily integrity has been found to be violated differ greatly from those presented here.

For example, in *Doe v. Taylor Independent School District*, the Fifth Circuit found that a teacher's repeated sexual molestation of a student violated her right to bodily integrity. 15 F.3d at 451. The

8

court also recognized in *Moore v. Willis Independent School District* that the right could be violated by the imposition of corporal punishment, but only if it was arbitrary, capricious, or otherwise unrelated to a legitimate state goal and there was no adequate remedy at state law. 233 F.3d at 875. A teacher's tying a student to a chair for nearly two school days provided another circumstance the court found to violate a student's bodily integrity rights. *Jefferson v. Ysleta Indep. Sch. Dist.*, 817 F.2d 303 (5th Cir. 1987).

What these cases have in common, and what is lacking here, is the infliction of bodily harm on students by teachers. In this case, the harm was caused by another student who had speared L.W. in the chest. "[A]s a general rule, there is no constitutional duty that requires state officials to protect persons from private harms." *Kovacic v. Villareal*, 628 F.3d 209, 213 (5th Cir. 2010). An exception exists, however, when there is a special relationship between the individual and the state, such as when the state, "through the affirmative exercise of its powers, acts to restrain an individual's freedom to act on his own behalf" such as through incarceration. *Id.* (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 324 (5th Cir. 2002). As Plaintiff recognizes, the Fifth Circuit has held that such a relationship does not exist between public schools and their students. *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 856–58 (5th Cir. 2012).

Plaintiff attempts to escape application of the special-relationship doctrine by pointing to out-of-circuit precedent suggesting that the official's facilitation or encouragement of a third party's acts is enough to support liability under § 1983. Plaintiff's own authority makes clear, however, that the state officer must have played a "principal role" in the violation such that the violation would not have occurred without his or her participation. *See, e.g.*, *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 610 (3d Cir. 2011). Plaintiff's complaint contains no allegations that the coach in this case affirmatively encouraged L.W.'s opponent to spear him with such force as to severely injure L.W. or

9

otherwise facilitated the student's act such that the coach could be said to have played a "principal role" in bringing about L.W.'s injury. *See id.*

At most, Plaintiff alleges that the coach created the dangerous conditions that made L.W. vulnerable to injury. This implicates the state-created-danger theory, which has not been adopted by the Fifth Circuit. Under this theory, the state may be liable for an injury caused by a private person if the state actor used his or her authority to create a dangerous environment for the plaintiff and acted with deliberate indifference to the plaintiff's plight. *Magee*, 675 F.3d at 865. To establish deliberate indifference, the plaintiff must show that the environment created by the state defendants was dangerous, that the defendants knew it was dangerous, and that they used their authority to create an opportunity that would not have otherwise existed for the injury to occur. *Id.* Additionally, the theory is inapplicable without a known victim. *Id.*

While many of the elements appear to be satisfied by the facts of this case, the parties are in agreement that the theory is inapplicable.[2] Specifically, the District contends that there was no known victim in this case, precluding liability under the theory. While the coach was undoubtedly aware of the individuals allegedly placed in danger during the mat drills, only the District is a defendant here. Since there is no allegation that the District possessed knowledge of any particular victim that may be placed in harm's way by its employee's conduct, the Court agrees with the District that the theory is inapplicable to this case as it is presented.

A second point of distinction between this case and those finding violations of a right to bodily integrity is the lack of any intentional violation of that right. Here, Plaintiff alleges only that the coach's actions were "objectively unreasonable," or, in other words, that the coach was negligent

---

[2] In a previous order, the Court directed the parties to "discuss whether the facts alleged might satisfy the elements of the state-created danger theory." (Order, Dkt. 10, at 2). Though intended as a request for the issue to be discussed in subsequent briefing, the parties interpreted the ambiguous language as an order to confer. The District reports that, following their conference, both parties are of the view that the state-created-danger theory is inapplicable to this case.

10

in requiring mat drills and failing to adequately assess L.W. for injury. However, negligent deprivations of constitutional rights do not create liability under § 1983. *Daniels v. Williams*, 474 U.S. 327, 330–31 (1986).

Having found that Plaintiff's bodily integrity claim insufficiently alleges state action and, in any case, alleges non-actionable negligence, the Court concludes that Plaintiff has failed to allege a constitutional deprivation on this basis.

### C. Medical Care

The District challenges Plaintiff's assertion that it violated L.W.'s right to receive medical care on the basis that such a right has not been recognized in the context of public schools. Plaintiff does not respond to the District's argument and thus does not appear to oppose dismissal of this claim. (*See generally* Pl.'s Resp., Dkt. 18). The Court notes that the Fifth Circuit has suggested that the state's responsibility for medical care is premised on the existence of a special relationship that is lacking between public schools and their students. *See Magee*, 675 F.3d at 859.

Additionally, the Court likewise views Plaintiff's allegations that school employees failed to take "reasonable steps" to address L.W.'s injury, (2d Am. Compl, Dkt. 11, ¶106), as stating a claim in negligence that is not actionable under § 1983. *See Daniels*, 474 U.S. at 330–31; *Myers v. Troup Indep. Sch. Dist.*, 895 F. Supp. 127, 130 (E.D. Tex. 1995) (dismissing § 1983 claim of football player who was sent back into game after having been knocked unconscious and suffering concussion because claim concerned only negligent acts of coach).

This claim, like the prior one, must be dismissed.

### D. Education

The District also challenges the alleged violation of L.W.'s right to an education. While the District concedes that L.W. has a constitutionally protected property interest in his education, it

11

contends that this interest is not infringed unless an individual is deprived of the entire educational process. Plaintiff does not respond to these arguments.

The Court hesitates to endorse the District's argument that a plaintiff's constitutional interest in his education is implicated only when he is deprived of the "total educational process." While the Supreme Court has held that "total exclusion from the educational process" for ten days implicates a student's constitutional property interest, it did not hold that nothing less could raise constitutional concerns. *See Goss v. Lopez*, 419 U.S. 565, 576 (1975). One district court opinion relied on this language from *Goss* to find that a "total" deprivation was the appropriate standard and was summarily affirmed by the Fifth Circuit in a per curiam, non-precedential decision. *Jeffrey v. Bd. of Trustees of Bells Indep. Sch. Dist.*, 261 F. Supp. 2d 719, 724–28 (E.D. Tex. 2003), *aff'd*, 96 F. app'x 248 (5th Cir. 2004). That authority is, of course, not binding.

That said, the District's second point—that Plaintiff has not adequately identified the educational opportunities unconstitutionally denied to L.W.—is well taken. The thrust of Plaintiff's complaint is that L.W.'s concussion left him with cognitive disabilities that have made it more difficult for him to learn, and that the District has not offered sufficient counseling, tutoring, or therapy. (*See* 2d Am. Compl., Dkt. 11, ¶114). However, the Fifth Circuit has held that "no protected property interest is implicated in a school's denial to offer a student a particular curriculum." *Nevares v. San Marcos Consol. Indep. Sch. Dist.*, 111 F.3d 25, 27 (5th Cir. 1997). The court recognized that state law could confer a property interest in a particular type of educational program, such as special education, but held that there was no cause of action without such basis. *Id.* Plaintiff here has not identified any basis in state law conferring a property interest in the services identified in her complaint. Accordingly, she has not properly stated a claim for the denial of L.W.'s right to an education. *See id.*

### E. District Liability

Because Plaintiff has named only the District as a defendant, she must show that the District is directly responsible for the constitutional violations alleged. *See Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010) ("Liability under the doctrine of *respondeat superior* is not cognizable in § 1983 actions."). To do so, she must show, "in addition to a constitutional violation, that an official policy promulgated by the [District's] policymaker was the moving force behind, or actual cause of, the constitutional injury," and that the policy was adopted "with deliberate indifference to the known or obvious fact that such constitutional violations would result." *James v. Harris Cty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Johnson v. Deep East Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004)).

Plaintiff has alleged insufficient facts to establish a policy that would support the district's liability. The only official policy identified was the District's adoption of an Athletic Concussion Plan. (2d Am. Compl., Dkt. 11, ¶ 28). Even in the absence of a formally approved policy, the District might be held liable for the persistent and widespread misconduct of its employees that is so well established as to become a custom. *Bennett v. City of Slidell*, 728 F.2d 762, 767–78 (5th Cir. 1984). However, Plaintiff has alleged only isolated incidents of injuries and fewer instances of concussions. Without more, Plaintiff's facts fail to plausibly allege a custom for which the District might be liable. *See Piotrowski v. City of Houston*, 237 F.3d 567, 581 (5th Cir. 2001) ("Isolated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for municipal section 1983 liability.") (quoting *Bennett*, 728 F.2d at 768 n.3)).

Plaintiff asserts that her allegations support liability under a failure-to-train theory. To prevail on a failure-to-train claim, a plaintiff must establish that: (1) the defendant's training policy procedures were inadequate, (2) the defendant was deliberately indifferent in adopting its training

13

policy, and (3) the inadequate training policy directly caused the constitutional violation. *Sanders-Burns*, 594 F.3d at 381.

Plaintiff alleges in her complaint that the coaches who were present at the time of L.W.'s injury never received appropriate training to respond to concussive injuries. (2d Am. Compl., Dkt. 11, ¶ 70). Even so, she does not allege sufficient facts to demonstrate that the training program, or lack thereof, had been adopted or retained with deliberate indifference. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* Other than L.W.'s own injury, Plaintiff identifies only one other student who did not receive proper care after head injuries in 2014 and 2015. (2d Am. Compl., Dkt. 11, ¶¶ 37–39). Plaintiff identifies two further injuries that occurred in 2013 and 2014, but they did not involve concussions and no alleged facts suggest these injuries were improperly handled. (*See id.* ¶ 45). Plaintiff is entitled to all reasonable inferences, but it is not reasonable to infer that the failure to treat the concussions of two students over a two-year span creates a pattern of constitutional violations that would put the District's policymakers on notice that its training was insufficient.

Plaintiff's theories of municipal liability therefore have insufficient support in her complaint. Even if she had properly alleged constitutional violations, the failure to articulate a basis for municipal liability would provide an independent basis for dismissing her § 1983 claims against the District.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the District's Second Amended Motion to Dismiss. (Dkt. 14). Plaintiff's claims are hereby **DISMISSED WITHOUT PREJUDICE**. Plaintiff is granted leave to amend her complaint within 21 days from the issuance of this order. If Plaintiff does not timely file an amended complaint, this order will convert to a dismissal with prejudice.

**SIGNED** on August 31, 2017.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE