IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JESSICA RYBURN, *as next friend of* L.W., | § § § § § | |
| Plaintiff, | § § | |
| v. | § | 1:16-CV-879-RP |
| GIDDINGS INDEPENDENT SCHOOL DISTRICT, | § § § § § | |
| Defendant. | § | |

# ORDER

Before the Court is Defendant's Third Amended Motion to Dismiss. (Dkt. 27). Having considered the parties' submissions, the record, and the applicable law, the Court agrees that dismissal of Plaintiff's claims is proper under Federal Rule of Civil Procedure 12(b)(6).

## I. BACKGROUND

Plaintiff Jessica Ryburn ("Plaintiff") brings this action on behalf of her minor son L.W., who was previously a student at a middle school within Giddings Independent School District ("Defendant"). The claims here arise from an injury L.W. sustained while engaged in an exercise called "mat drills" at the direction of his coach.[1]

The present motion to dismiss comes after several rounds of amended pleadings. Plaintiff's original complaint contained only a single claim under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX"). (Dkt. 1, ¶ 61). Defendant filed a motion to dismiss, (Dkt. 2), and Plaintiff responded by filing an amended complaint, (Dkt. 5). Plaintiff's First Amended

---

[1] The Court summarized the key factual allegations more fully in its order dated August 31, 2017. (Dkt. 24). Because Plaintiff's Third Amended Complaint repeats the bulk of the factual allegations in the Second Amended Complaint verbatim, (*see* Dkts. 11, 25), the Court will focus its discussion on the Third Amended Complaint's newly added facts, which the Court will address in the substantive discussion that follows.

Complaint kept the Title IX claim and added a claim under 42 U.S.C. § 1983 ("Section 1983") based on an alleged violation of L.W.'s rights under the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. (Dkt. 5, ¶¶ 97–104). Defendant filed another motion to dismiss, (Dkt. 6), and Plaintiff again amended her complaint, (Dkt. 11).

Plaintiff's Second Amended Complaint retained L.W.'s Title IX and Section 1983 claims, but modified the latter by adding several new constitutional violations: L.W.'s constitutional rights to bodily integrity, medical care, and education. (*Id.* ¶¶ 96–121). Defendant moved to dismiss a third time, (Dkt. 14), and in an order issued on August 31, 2017 ("August 31 Order"), the Court dismissed all of Plaintiff's claims without prejudice. (Dkt. 24). In that order, the Court also granted Plaintiff leave to amend her complaint a third time. (*Id.* at 15). Plaintiff accepted the Court's invitation and filed her Third Amended Complaint, (Dkt. 25), which is the subject of the present motion to dismiss.

There is little in Plaintiff's Third Amended Complaint that differs from the second. Plaintiff added some new factual allegations, but the vast majority of Plaintiff's allegations are simply recited verbatim from the Second Amended Complaint. Plaintiff also recharacterized some of the constitutional violations underlying her Section 1983 claim and added a handful of new facts to her Title IX claim. Finally, Plaintiff added claims under Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131, *et seq.* ("ADA"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* ("Section 504").

## II. DISCUSSION

Defendant argues that Plaintiff's claims should be dismissed pursuant to Federal Rules of Procedure 12(b)(1) and 12(b)(6). (Dkt. 27, at 1). Defendant argues that Rule 12(b)(1) requires dismissal of Plaintiff's Title IX, ADA, and Section 504 claims. (*Id.* ¶ 7). Defendant argues that because Plaintiff failed to exhaust her ADA and Section 504 claims, the Court lacks subject-matter

2

jurisdiction over those claims. (*Id.* ¶ 9 ("Because alleged 'exhaustion' is not explained for the vague ADA and [Section] 504 claims, those likewise do not confer jurisdiction.")). Defendant also states that the Court lacks jurisdiction over Plaintiff's Title IX claim because "Plaintiff has not stated a recognized cause of action under Title IX." (*Id.*). Although Plaintiff does not address Defendant's 12(b)(1) arguments, the Court is nonetheless not persuaded to follow them.² Accordingly, the Court will consider whether dismissal of Plaintiff's claims is appropriate under Rule 12(b)(6). For the reasons discussed below, the Court holds that all of Plaintiff's claims should be dismissed for failure to state a claim upon which relief can be granted.

### A. Standard of Review

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the [plaintiff's] grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded

---

² Because Plaintiff's ADA claim is brought under Title II, exhaustion is not required. *See Mire v. Bd. of Supervisors of La. State Univ.*, No. CV 15-6965, 2017 WL 661260, at *5 (E.D. La. Feb. 17, 2017) ("Although the Fifth Circuit has twice declined to reach the question . . . the clear consensus among other courts is that Title II, unlike Title I, imposes no administrative exhaustion requirement.") (collecting cases). As for Plaintiff's Section 504 claim, exhaustion is not required because Defendant is a federal grantee rather than a federal agency. *See Webster v. Bd. of Supervisors of Univ. of La. Sys.*, No. CV 13-6613, 2015 WL 4197589, at *4 (E.D. La. July 10, 2015) ("[S]ection 504 of the Rehabilitation Act does not require plaintiffs to exhaust administrative remedies before filing a claim against federal grantees."). Finally, Defendant identifies no authority supporting its theory that Plaintiff's failure to state "a recognized cause of action under Title IX," (Dkt. 27, ¶ 9), deprives the Court of jurisdiction over Plaintiff's Title IX claim.

3

facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—-that the pleader is entitled to relief." *Id.* at 679 (quotation marks and citation omitted).

## B. *Plaintiff's Title IX Claim*

In the Court's August 31 Order, the Court dismissed Plaintiff's Title IX claim because "Plaintiff's allegation that L.W. was required to engage in exercises that female students were not simply does not suffice to state a plausible claim of actionable discrimination under Title IX." (Dkt. 24, at 6). Plaintiff's Third Amended Complaint introduces a handful of irrelevant new facts but largely doubles down on the theory of Title IX liability that the Court already rejected.

In Plaintiff's Third Amended Complaint, Plaintiff adds that the mat drill is "an excessively dangerous practice . . . not provided to [L.W.'s] female peers." (Dkt. 25, ¶ 116). Plaintiff states the Defendant "violated L.W.'s rights under Title IX by having him participate in a physical education class which was intended to create a spectacle, when there is no such similar physical education class for females." (*Id.* ¶ 118). Plaintiff emphasizes that L.W. was injured by a student who was 80 pounds larger than he was and that female students are not pitted against "much bigger and heavier" female students in any similar exercise class. (*Id.* ¶¶ 14–15, 47, 63, 117). Prior to L.W.'s injury, another student allegedly suffered a different injury ("an ankle injury") doing a different exercise ("running snakes . . . up and down the bleachers"). (*Id.* ¶ 50). According to Plaintiff, Coach Strickland and other coaches would "foster" a "loud and chaotic" environment and "purposefully pit a larger student against a smaller student knowing that it would create a big knockout and loud response from the crowd." (*Id.* ¶¶ 56–59). Plaintiff argues that Coach Strickland would not have shrugged off L.W.'s injury as "[getting] his bell rung" if a female student had been injured in the same way. (*Id.* ¶ 119). Finally, Plaintiff alleges that Coach Strickland's comment about L.W. getting his "bell rung" is evidence of discriminatory intent. (*Id.* ¶ 120).

4

As Defendant points out, nothing in Plaintiff's Third Amended Complaint—new or repeated from the Second Amended Complaint—alleges that Defendant had actual notice of discriminatory treatment. (Dkt. 27, ¶ 12). This is fatal to Plaintiff's Title IX claim. "[A] recipient of federal funds may be liable in damages under Title IX only for its own misconduct." *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 640 (1999). Accordingly, a damages claim under Title IX requires either that (1) the adoption of a discriminatory policy by the recipient entity or (2) deliberate indifference by an official with actual knowledge of discrimination by the entity's programs. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998) ("[A] damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [federal funding] recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond."). To qualify as an official whose actual knowledge is attributable to the school district, the official must be "invested by the school board with the duty to supervise the [discriminating] employee and the power to take action that would end such abuse." *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 660 (5th Cir. 1997). A school district is not liable under Title IX when the discriminating employee is "the only employee or representative of the recipient who has actual knowledge" of the discrimination. *Salazar v. S. San Antonio Indep. Sch. Dist.*, 690 F. App'x 853, 864 (5th Cir. 2017).

Here, Plaintiff has not alleged that the mat drills are a district policy.[3] At most, Plaintiff alleges that Coach Strickland acted with discriminatory intent in requiring L.W. to do a dangerous exercise that he did not require female students to do.[4] Plaintiff has not alleged that Coach

---

[3] In fact, the factual allegations regarding Defendant's policies concentrate on the lack of a policy that might have prevented Plaintiff's injury rather than the presence of a discriminatory policy that led to Plaintiff's injury. (*See* Dkt. 25, ¶¶ 32–39).

[4] For the reasons discussed in the Court's August 31 Order, the Court is not persuaded that Coach Strickland's gender-specific use of the mat drills is discriminatory rather than merely different. (Dkt. 24, at 5–6). Even assuming *arguendo* that Coach Strickland's use of the mat drills is discriminatory, Plaintiff has failed to allege facts sufficient to establish the district's actual knowledge of the discriminatory use of the mat drills.

Strickland is a district official with authority to take corrective measures on the district's behalf to remedy the discriminatory use of a dangerous exercise program. Nor has Plaintiff alleged that Coach Strickland's supervisors knew about the mat drills. Because Plaintiff has failed to allege facts that might plausibly indicate that a district official had actual notice of Coach Strickland's allegedly discriminatory use of the mat drills, Plaintiff fails to state a Title IX claim against Defendant.[5]

*C. Plaintiff's Section 1983 Claims*

As the Court discussed in its August 31 Order, Defendant can only be held liable for the alleged constitutional violations if it is liable directly on the basis of a district policy, practice, or custom. (Dkt. 24, at 13–14). The Court held that Plaintiff's failure to plead more than "isolated instances of injuries and fewer instances of concussions" provided "an independent basis" for dismissing all of Plaintiff's Section 1983 claims. (*Id.*). Plaintiff's Third Amended Complaint offers no new facts that would remedy the deficiencies in Plaintiff's Second Amended Complaint. The only new injury alleged that might possibly support municipal liability against Defendant is an allegation of a student suffering a different injury ("an ankle injury") doing a different exercise ("running snakes . . . up and down the bleachers"). (Dkt. 25, ¶ 50). For the reasons discussed in the Court's August 31 Order, Plaintiff has not alleged facts sufficient to establish a policy, practice, or custom, nor has it alleged facts sufficient to constitute the notice required to establish deliberate indifference with respect to training and supervision. (*See* Dkt. 25, at 13–14). Accordingly, Plaintiff's Third Amended Complaint fails to state a Section 1983 claim against Defendant.[6]

---

[5] Although Plaintiff alleges that former Athletic Director Derek Fitzhenry was told about the mat drills after another student was injured, Plaintiff admits that the drills stopped until Director Fitzhenry left the district in 2014. (Dkt. 25, ¶ 52). Plaintiff does not allege that any district official had actual notice that the mat drills resumed at the time that L.W. was injured.

[6] Because the Court holds that Plaintiff's allegations are insufficient to state a claim of direct liability against Defendant, the Court does not consider whether Plaintiff's substantive constitutional-violation allegations are sufficient for the purposes of Defendant's motion to dismiss.

*D. Plaintiff's ADA and Section 504 Claims*

Plaintiff's Third Amended Complaint states, in conclusory fashion, that Plaintiff is a "qualified individual with a disability" under the ADA and "a student with a disability as contemplated by the Rehab[ilitation] Act." (Dkt. 25, ¶¶ 134, 130). In similarly conclusory fashion, Plaintiff states that Defendant failed to accommodate L.W. as required by both statutes. (*Id.* ¶¶ 131, 137).

"To state a claim under Title II, a plaintiff must allege (1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." *Garrett v. Thaler*, 560 F. App'x 375, 382 (5th Cir. 2014) (quotation marks and citation omitted). "To recover monetary damages, a plaintiff must prove that the discrimination was intentional." *Wells v. Thaler*, 460 F. App'x 303, 311–12 (5th Cir. 2012). The Fifth Circuit has held that "facts creating an inference of professional bad faith or gross misjudgment are necessary to substantiate a cause of action for intentional discrimination under [Section] 504 [of the Rehabilitation Act]." *C.C. v. Hurst-Euless-Bedford Indep. Sch. Dist.*, 641 F. App'x 423, 426 (5th Cir. 2016). "Because the terms of Title II of the ADA and [S]ection 504 of the Rehabilitation Act are so similar, this Court evaluates [plaintiffs'] claims under the statutes together and applies jurisprudence interpreting either section to both." *Pagan-Negron v. Seguin Indep. Sch. Dist.*, 974 F. Supp. 2d 1020, 1029 (W.D. Tex. 2013) (quotation marks omitted) (citing *D.A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 453 (5th Cir.2010)).

"A critical component of a Title II claim for failure to accommodate"—and likewise, a failure-to-accommodate claim under Section 504—"is proof that the disability and its consequential limitations were known by the entity providing public services." *Windham v. Harris Cty., Texas*, No. 16-20686, 2017 WL 5245104, at *4 (5th Cir. Nov. 13, 2017) (quotation marks, brackets, and citation

omitted). Moreover, "[m]ere knowledge of the disability is not enough; the service provider must also have understood the limitations [the plaintiff] experienced . . . as a result of that disability." *Id.* (quotation marks and citation omitted). Accordingly, "[w]hen a plaintiff fails to request an accommodation in this manner, he can prevail only by showing that the disability, resulting limitation, and necessary reasonable accommodation were open, obvious, and apparent to the entity's relevant agents." *Id.* (quotation marks and citation omitted).

Here, Plaintiff's ADA and Section 504 claims are predicated on Defendant's alleged failure to accommodate L.W.'s disability. (*See* Dkt. 25, ¶ 131 ("The School District had a duty to accommodate L.W.'s disabilities . . . . They failed to do so and [thus] violated his rights under [Section 504]."); *id.* ¶ 137 ("[T]he School Board failed and refused to reasonably accommodate and modify services to him in violation of Title II of the ADA.")). However, Plaintiff's complaint contains only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which do not suffice to state a claim upon which relief can be granted. *Iqbal*, 556 U.S. at 678.

First, even assuming that L.W. is disabled for the purposes of either statute,[7] Plaintiff's Third Amended Complaint fails to allege that L.W. requested an accommodation—or even what the necessary accommodation might have been. Second, in the absence of alleging that L.W. requested an accommodation, Plaintiff also fails to allege that L.W.'s disability and necessary accommodation was so open, obvious, and apparent to any of Defendant's agents that a request would have been unnecessary. Third, Plaintiff fails to allege that Defendant knew of L.W.'s limitations or that those limitations resulted from his disabilities. Finally, Plaintiff—who seeks only damages as relief, (*see id.*

---

[7] Plaintiff does not actually specify what L.W.'s disability is or how it might significantly limit him in a major life activity. *See* 28 C.F.R. § 35.108(a)(1) (defining "disability" for the purposes of the ADA). That said, Plaintiff does plead facts suggesting a disability under the ADA. (*See* Dkt. 25 ¶¶ 89–112 (alleging that L.W. has Attention Deficit Disorder and dyslexia, which have caused him "great trouble focusing and concentrating," lead to "significant setbacks and regression with his ability to . . . spell words . . . retain and learn new vocabulary," and which ultimately contributed to his withdrawal from public school)). However, because the Court disposes of Plaintiff's ADA and Section 504 claims on other grounds, it need not decide whether Plaintiff is disabled for the purposes of either statute.

¶¶ 142–44)—alleges neither that Defendant intentionally discriminated against L.W. on the basis of L.W.'s disability, nor any facts capable of supporting an inference of professional bad faith or gross misjudgment. For all of these reasons, each of which is fatal to Plaintiff's ADA and Section 504 claims independently, Plaintiff fails to state a claim for which relief can be granted under Title II of the ADA or Section 504 of the Rehabilitation Act.[8]

### III. CONCLUSION

For the foregoing reasons, Defendant's Third Amended Motion to Dismiss, (Dkt. 27), is **GRANTED**.

The decision to allow a party to amend its pleadings is within the sound discretion of the district court. *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted). "The Court should grant the opportunity to amend unless it concludes that the plaintiff cannot prevail under any legal scenario based on the factual allegations alleged in the complaint." *Linder v. Deutsche Bank Nat'l Tr. Co.*, No. EP-14-CV-00259-DCG, 2015 WL 12743639, at *6 (W.D. Tex. Jan. 6, 2015) (citing *Carroll v. Fort James Corp.*, 470 F.3d. 1171, 1175 (5th Cir. 2006)). That is, the Court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds that the plaintiff has already alleged his or her best case. *See Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999) (citing with approval the proposition that "a district court does not err in dismissing a . . . complaint with prejudice if the court determines the plaintiff has alleged his best case").

Here, Plaintiff has been given leave to amend her complaint three times over a period of more than 12 months. Plaintiff is represented by experienced counsel. Plaintiff had the guidance of the Court's August 31 Order and failed to provide new facts in her Third Amended Complaint that

---

[8] Consistent with her threadbare pleading on these two claims, Plaintiff's Response to Defendant's motion to dismiss does not bother to address Plaintiff's ADA or Section 504 claims at all, despite the considerable effort Defendant spent addressing the sufficiency of those allegations. (Dkt. 27, ¶¶ 18–23).

addressed the deficiencies in the Second Amended Complaint. Plaintiff has had ample opportunity to plead her best case and has failed to state a claim under Rule 12(b)(6) twice.

Therefore, the Court **ORDERS** that Plaintiff's Third Amended Complaint, (Dkt. 25), is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the case is **CLOSED**.

**SIGNED** on November 27, 2017.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE